IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cathleen J. Poland, *et al.*, | : | |
| | : | Case No. 1:10-cv-326 |
| Plaintiffs, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING MOTION FOR |
| CSC Applied Technologies, LLC, *et al.*, | : | SUMMARY JUDGMENT AND |
| | : | DENYING REQUEST FOR |
| Defendants. | : | CONTINUANCE |

      This matter is before the Court on Defendant Computer Science Corporation Applied Technologies, LLC's Motion to Dismiss, or in the Alternative, for Summary Judgment (doc. 9) and Plaintiffs' Request for Continuance under Federal Rule [of Civil Procedure] 56(f)[1] (doc. 16). Fifty-one Plaintiffs initiated this suit against Computer Science Corporation Applied Technologies, LLC ("the Company" or "CSC"), their former employer, and the American Postal Workers Union, AFL-CIO ("the Union"), their former collective bargaining representative. (Doc. 1.) Plaintiffs allege in the Complaint that the Company violated the Workers Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*, by giving them only three days notice prior to the termination of their employment due to a plant closing. Plaintiffs also allege that the Company violated the National Labor Relations Act ("NLRA") § 8, 29 U.S.C. § 158. For the reasons that follow, the Court will **GRANT** summary judgment to the Company and **DENY** Plaintiffs' request for a continuance.

---

[1] The Federal Rules of Civil Procedure were amended effective December 1, 2010. The provision upon which Plaintiff's Request for Continuance has been redesignated Rule 56(d).

I. **BACKGROUND**

A. **Relevant Facts**

Because both parties have submitted evidentiary material outside the scope of the Complaint, the Court will treat CSC's Motion to Dismiss, or in the Alternative, for Summary Judgment as a motion for summary judgment. Fed. R. Civ. P. 12(d).

The following facts are derived from the Company's Statement of [Proposed] Undisputed Facts (doc. 9-2), except as stated otherwise:

The Company held a contract with the U.S. Postal Service ("USPS") to run a Mail Transport Equipment Service Center ("Mail Center") in the Cincinnati, Ohio area. The Company's facility was located at 9266 Meridian Way, West Chester, Ohio until June 30, 2009. Plaintiffs are former CSC employees who worked at the West Chester facility. The Company serviced USPS mail transport equipment including sacks, trays, and rolling stock containers at the Mail Center. The Company did not perform work at the Mail Center for any other customer except USPS.

The employment of the workers at the Mail Center in West Chester was conditioned upon the Company's contract with USPS. CSC's standard employment letter stated that potential employees were being offered a position with the USPS Mail Center contract in West Chester. (Doc. 9-4 at 14.) CSC customarily provided employees with updated wage and benefit rate information each time USPS extended the Mail Center contracts. (Doc. 9-4 at 15.) Finally, the collective bargaining agreement between CSC and the Union stated in Article 31 "Termination of the USPS Contract" as follows:

> This Agreement is expressly limited to the work assigned to the Company to be performed at the West Chester, Ohio [Mail Center] facility pursuant to the

>contract between the Company and USPS. If the USPS cancels, does not renew, or otherwise terminates its contract with the Company with respect to the work to be performed at such facility, all obligations on the Company required by this Agreement shall cease . . . upon the effective termination date of the USPS contract with respect to the work to be performed at said facility."

(Doc. 9-5 at 39.)

On April 17, 2009, USPS notified the Company it had not reached a decision as to whether to renew its contract at the Company's West Chester facility. The contract was to expire on June 30, 2009 if it was not extended. In turn, on April 22, 2009, CSC issued a written notice to the Plant Manager of the West Chester facility, Robert Mutach, that his employment with CSC would terminate as of July 1, 2009 due to the plant closing. (Doc. 9-4 at 1.) On April 30, 2009, CSC plant management issued notices with similar language to hourly workers at the West Chester facility. (Doc. 9-4 at 2.)

>The April 30, 2009 notice to employees stated in relevant part:
>
>As required by the Worker Adjustment and Retraining Notification (WARN) Act of 1988, I am providing you with formal notification that as of July 1, 2009, [CSC] will no longer be able to offer you continued employment with the Company at the Cincinnati [Mail Center], 9266 Meridian Way, West Chester, Ohio 45069. This action is due to fact that our Customer has not yet made a final decision on the possible renewal of the contract at this facility, which we must at this time conclude to mean the permanent end of the contract at this facility. You will be notified again if the date indicated above should change or if the contract is extended.

(*Id.*) The employees were informed that they should contact "Louisa Arredondo, Human Resources, Postal Operations" at a specific address and phone number if they had any questions. (*Id.*)

Plaintiffs Serigne Ndiaye and Derrick Davis confirmed in Affidavits that they received the April 30, 2009 notice indicating that CSC was unsure whether its contract with the USPS

would be renewed. (Ndiaye Aff. ¶ 5; Davis Aff. ¶ 3.) Ndiaye and Davis both also stated that Charles Coy, CSC's Program Manager for Postal Operations, told employees that CSC did not believe that the West Chester facility would close because the USPS had a history of renewing its contracts at the last minute. (Ndiaye Aff. ¶¶ 7-8; Davis Aff. ¶¶ 5-7.) Ndiaye averred that Coy stated that the notice was "just a piece of paper." (Ndiaye Aff.¶ 7.) Ndiaye and Davis averred that they relied on Coy's statement and believed the contract would be renewed. (Ndiaye Aff. ¶ 9; Davis Aff. ¶ 7.)

Also on April 30, 2009, CSC issued notice of the plant closing to the Union, which represented the bargaining unit employees at the West Chester facility. The Union notice contained similar language:

> This notice is being provided pursuant to the Worker Adjustment and Retraining Notification Act (WARN) of 1988, which requires employers to give notice of a pending mass layoff or permanent closure.
>
> This is to advise you that on July 1, 2009, CSC Cincinnati [Mail Center] located at 9226 Meridian Way, West Chester, Ohio 45069 may permanently close the facility due to the end of the contract. The number of represented employees affected is 104. A list of the affected positions is below.

(Doc. 9-4 at 3.)

On or about May 21, 2009, USPS requested that CSC prepare a pricing proposal for a nine-month extension of the Mail Center contract, plus two three-month options. The same day, however, the landlord for the building in which the West Chester facility was located, Duke Realty Corporation ("Duke"), issued a notice to CSC to vacate the building by June 30, 2009. (Doc. 9-4 at 4.) The landlord indicated that it had found a replacement tenant for the space CSC had been leasing. (*Id.*) The Company had no notice prior to that day that Duke had found a replacement tenant for the building.

4

Between May 22 and June 1, 2009, the Company searched for an alternate facility in the Cincinnati area based on USPS's requested terms. On June 1, 2009, a CSC representative visited a facility in Sharonville, Ohio. On June 3, 2009, however, the facility's landlord indicated that a minimum lease term of eighteen months was required. Because USPS had expressly stated that nothing longer than one year would be considered, CSC could not lease the space in Sharonville.

On June 2, 2009, the Company learned of another possible match at a facility in Jeffersonville, Ohio. Mutach, the Plant Manager, visited the facility on June 3, 2009 and confirmed that it would accommodate CSC's operations. The new Jeffersonville location was less than sixty-five miles from the West Chester facility.

On June 4, 2009, CSC's Postal Operations decided that moving to a new facility for the term of the USPS extension made better business sense than shutting down the Cincinnati-area facility completely. The Company approved the Jeffersonville facility the next day.

On June 8, 2009, USPS accepted CSC's updated one-year pricing proposal for the Jeffersonville facility. The same day, CSC issued revised notices to all employees at the West Chester facility which stated in relevant part as follows:

> As required by the Worker Readjustment and Retraining Notification Act of 1988, I am providing you with a revised notification that beginning on June 15, 2009, [CSC] will begin permanent layoffs at the Cincinnati [Mail Center], 9266 Meridian Way, West Chester, Ohio 45069. We have recently been notified that we must vacate the building at this address no later than June 30, 2009, and as a result our only Customer — USPS — will begin sending work to other facilities effective June 15, 2009. We will immediately make plans to ramp down for closure and will begin to lay off junior employees in each department in accordance with the Collective Bargaining Agreement between CSC and [the Union] under which you are covered.

(Doc. 9-4 at 5.) The new notice again stated that employees with questions could contact Louisa Arrendondo from CSC's Postal Operations group. Plaintiffs Ndiaye and Davis confirmed in

5

their Affidavits that they received notice on June 8, 2009 that the plant would close because the landlord had ordered the Company to vacate. (Ndiaye Aff. ¶ 11; Davis Aff. ¶ 8.)

Also on June 8, 2009, the Company gave updated notice to the Union. The Union filed a grievance concerning the Company's move to Jeffersonville on or about June 11, 2009. The Company bargained with the Union over the effects of the West Chester facility closing and the transfer of operations to Jeffersonville.

On June 11, 2009, USPS issued a modified extension of the contract for the Jeffersonville facility, effective July 1, 2009. The contract stated that the "purpose of the contract modification" is to "establish a new facility in Jeffersonville, Ohio" because "the lease for the facility in Cincinnati expires on June 30, 2009 and the landlord will not renew the lease." (Doc. 9-4 at 9.) Further, the contract stated that "the [Mail Center] operation at the Cincinnati facility will be closed down and CSC must vacate the facility not later than June 30, 2009." (*Id.*)

On June 18, 2009, CSC provided employees of the West Chester facility the right of first refusal on positions at the Mail Center facility in Jeffersonville. In the election letter, CSC gave employees the option to elect to accept or decline a "position with CSC at the Jeffersonville plant starting on June 29, 2009 or sooner if required." (Doc. 9-4 at 12.) CSC further stated in the letter that by accepting the position, the employees would be "committing to work for a minimum of four weeks, ending on July 23, 2009." (*Id.*) Finally, CSC stated in the letter that for those who declined to transfer to Jefferson, their "last day of employment with the Company will be June 30, 2009." (*Id.*) Plaintiffs Ndiaye and Davis averred that they received the election letter on June 18, 2009. (Ndiaye Aff. ¶¶ 15-17; Davis Aff. ¶¶ 12-14.)

On June 20 and 21, CSC hosted an open house at the new Jeffersonville facility for

6

employees weighing the decision whether to accept transfer to the new facility. Employees attending the open house received reimbursement for the mileage incurred in making the trip to Jeffersonville.

CSC and the Union signed a Memorandum of Agreement dated June 22, 2009 concerning the Jeffersonville facility. The Memorandum of Agreement provided in relevant part:

> D. The [Jeffersonville] facility will be covered by the current Collective Bargaining Agreement (CBA) and current employees who opt to transfer to Jeffersonville, up to the maximum manning, will be offered jobs at the new facility, in order of seniority.
>
> * * *
>
> F. Whether an employee will transfer is entirely voluntary on the part of that employee. Employees opting not to move or failing to exercise the option to move to the new facility will be . . . subject to recall rights in accordance with the CBA if CSC in the future moves this [Mail Center] back to the Greater Cincinnati Area.
>
> * * *
>
> P. CSC understands that traveling long distances to work each day or even plant conditions or location preferences will not assure that employees transferring to this new location will want to make the transfer on a permanent basis. Accordingly, employees starting work on June 29, 2009 (or sooner if required) will have a four week trial period ending on July 23, 2009. Employees who elect not to continue working at the new facility at the end of this trial period . . . will be placed on layoff due to lack of work, eligible for unemployment benefits and subject to recall, in accordance with the CBA, if CSC reopens the [Mail Center] in the Greater Cincinnati Area.

(Doc. 9-4 at 6-7.)

Plaintiff Ndiaye was a Union steward at all times relevant to the events at issue in this lawsuit. (Ndiaye Aff. ¶ 26.) Ndiaye was not given notice about a June 21, 2009 meeting between Union officials and CSC during which the negotiations concerning the facility closing were held. (*Id.* ¶¶ 28-30.)

On June 29, 2009, a CSC Human Resources representative for the Cincinnati-area Mail

7

Center, Angie Williams, issued notices to all remaining employees who had declined to transfer which stated that effective that same day, "your employment with CSC is terminated due to layoff, a reduction in force." (Doc. 9-4 at 13.)

Approximately fifty CSC hourly employees elected to transfer to the Jeffersonville facility. The employees who transferred to Jeffersonville had no break in service with CSC. The remaining employees were laid off effective June 30, 2009, including Plaintiffs Serigne Ndiaye and Derrick Davis. (Ndiaye Aff. ¶ 4; Davis Aff. ¶¶ 2, 25.) Ndiaye and Davis both averred that they would have accepted the transfer to Jeffersonville if they had been given "sufficient time to make arrangements" to transfer. (Ndiaye Aff. ¶ 25; Davis Aff. ¶ 21.)

Five Plaintiffs—Rachael Bennett, Rome Blassingame,[2] Matthew Dawson, Doug Foley,[3] and Rick Lee—accepted transfer to the Jeffersonville facility, worked the agreed-to four weeks, and then voluntarily terminated their employment on July 24, 2009. Two Plaintiffs—Ahijah Israel and Bassey Essanetok—were laid off in March 2009 for reasons unrelated to the closing of the West Chester facility. Likewise, two other Plaintiffs—Maurice Daniels and Soule Kamara—were laid off in May 2009 for reasons unrelated to the West Chester facility closing.

On or about November 19, 2009, Plaintiff Cathleen Poland filed an unfair labor practice charge against CSC with the National Labor Relations Board ("NLRB") alleging that CSC "has refused to bargain over the terms and conditions of a transfer from its West Chester, Ohio facility to its Jeffersonville, Ohio facility." (Doc. 9-6.) The NLRB investigated and dismissed the

---

[2] Plaintiffs identify a person named Romeari Blessinghan in the Complaint. The Court presumes that Rome Blassingame refers to the same person.

[3] Plaintiffs identify a person named Douglas Folley in the Complaint. The Court presumes that Doug Foley refers to the same person.

charge filed by Poland stating in the dismissal letter that "there is insufficient evidence of a violation and further proceedings are not warranted at this time." (Doc. 9-7.) Poland filed an appeal of the dismissal which the NLRB denied on May 7, 2010. (Doc. 9-8.)

**B.     Procedural Background**

Plaintiffs filed their two-count Complaint against CSC and the Union on May 20, 2010. Plaintiffs alleged violations of the WARN Act and the NLRA against CSC and a violation of the NLRA against the Union. The Court's docket sheet indicates that the Union has not been served with the Complaint nor has it entered an appearance.

CSC filed the pending Motion to Dismiss, or in the Alternative, for Summary Judgment on July 20, 2010. CSC attached materials outside the pleadings and requested that the Motion be treated as one for summary judgment. Pursuant to the Court's Standing Order Governing Civil Motions for Summary Judgment, CSC also filed a Statement of [Proposed] Undisputed Facts (doc. 9-2) concurrently with the pending Motion. CSC moved for summary judgment on both claims on multiple grounds, including that it satisfied the requirements of the WARN Act, that it alternatively was exempt from the requirements of the WARN Act, and that the Court lacked subject matter jurisdiction over the NLRA claim.

Plaintiffs failed to respond to the Motion or to the Statement of Undisputed Facts within twenty-one days as required by Local Rule 7.2(a)(2). After the deadline, on August 20, 2010, Plaintiffs filed a purported "Response" that challenged CSC's motion on the grounds that CSC had not yet filed an answer to Plaintiffs' Complaint. (Doc. 11.) The Court issued an Order on August 27, 2010 in which the Court (1) recognized that Rule 12 of the Federal Rules of Civil Procedure permitted CSC to file a dismissal motion in lieu of an answer and (2) required that

9

Plaintiffs file a substantive memorandum in opposition within fourteen days.  (Doc. 13.)  The Court also specifically "urged [Plaintiffs' counsel] to familiarize himself with the Federal Rules of Civil Procedure, the Local Rules, and this Court's Forms and Procedures."  (*Id.* at 2.)  Plaintiffs then filed their substantive Memorandum in Opposition to CSC's Motion on September 13, 2010, after receiving an additional extension of time.  (Doc. 15, 17.)  Plaintiffs supported their Memorandum in Opposition with affidavits by two Plaintiffs.  Plaintiffs, however, still failed to respond to CSC's Statement of [Proposed] Undisputed Facts.  CSC pointed out Plaintiffs' failure in their Reply brief.  (Doc. 18 at 2-3.)  CSC requested that the Court construe their proposed facts as true for purposes of the pending Motion.  Even after CSC pointed out Plaintiffs' omission, Plaintiffs did not move for leave to file a response to CSC's Statement of [Proposed] Undisputed Facts.  However, also on September 13, 2010, Plaintiffs filed the pending Request for Continuance.   Plaintiffs contend in the Request for Continuance that they currently lack sufficient evidence to oppose summary judgment and that they require time to conduct discovery to marshal evidence to support their opposition.

**II.     ANALYSIS**

**A.     WARN Act Claim against CSC**

    **1.     WARN Act Standards**

Plaintiffs allege that CSC failed to provide timely notice of the West Chester facility closing in violation of the WARN Act, 29 U.S.C. § 2102.  The WARN Act prohibits an employer from ordering "a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order--(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each

affected employee." 29 U.S.C. § 2102(a). A WARN Act notice must be "specific" and "based on the best information available to the employer at the time the notice is served." 20 C.F.R. § 639.7(a)(1) and (4). The notice shall state whether the planned action is expected to be temporary or permanent, whether the entire plant is to be closed, the expected schedule of job separations, the positions and workers affected, whether bumping rights would exist, and a name and telephone number of a company official to contact for further information. 20 C.F.R. § 639.7(c) and (d).

The notice may be "conditional upon the occurrence or nonoccurrence of an event, such as the renewal of a major contract, only when the event is definite and the consequences of its occurrence or nonoccurrence will necessarily, in the normal course of business, lead to a covered plant closing or mass layoff less than 60 days after the event." 20 C.F.R. § 639.7(a)(3). Liability should not be based upon "errors in the information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors." *Id.* Employers who violate the WARN Act generally are liable for back pay damages for each day of the violation. 29 U.S.C. § 2104(a)(1).

The WARN Act provides several exceptions to the sixty-day advance notice requirement wherein the employer only must "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3); *see also* 20 C.F.R. § 639.9. One such exception is for closings necessitated by "business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). "An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and

11

unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1). Further, "the test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment" such that the employer "must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market." 20 C.F.R. § 639.9(b)(2). "[A] company will be excused from WARN liability if, when confronted with potentially devastating occurrences, it reacts as would reasonable employers within its own market." *Watson v. Mich. Indus. Holdings, Inc.*, 311 F.3d 760, 765 (6th Cir. 2002) (citation omitted).

In a second exception, a WARN Act notice is not required if "the closing is of a temporary facility or the closing or layoff is the result of the completion of a particular project or undertaking, and the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking." 29 U.S.C.A. § 2103(1).

The WARN Act also provides that notice is not required in certain cases involving job transfers. 29 U.S.C. § 2101(b). Notice is not required where the plant closing or layoffs are "the result of the relocation . . . of the employer's business[,]" and the employer "offers to transfer the employee to a different site of employment within a reasonable commuting distance" or "the employer offers to transfer the employee to any other site of employment regardless of distance with no more than a 6-month break in employment, and the employee accepts within 30 days of the offer or of the closing or layoff, whichever is later." 29 U.S.C. § 2101(b)(2)(B).

### 2. Analysis and Plaintiff's Request for Rule 56(d) Continuance

CSC's primary basis for summary judgment is that the April 30, 2009 notice which CSC

provided to its employees satisfied the requirements of the WARN Act. Plaintiffs respond that the notice given on April 30, 2009 does not satisfy the WARN Act and they seek a continuance in order to obtain discovery. Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). Motions for summary judgment can be made "at any time," Fed. R. Civ. P. 56(b), and therefore a defendant may file the motion before any discovery has been conducted. *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 280-81 (6th Cir. 2005). The Company points out that Plaintiffs had almost two months after the Company filed its summary judgment motion to gather rebuttal information and prepare a response.

In seeking a continuance, a plaintiff must file an "affidavit or declaration" explaining why it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The plaintiff must make more than "general and conclusory statements" to support the need for a Rule 56(d) continuance. *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009). Regardless of whether the plaintiff has had the prior opportunity to conduct discovery in the case, the plaintiff must set forth in the affidavit the "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Short*, 129 F. App'x at 282 (citation omitted). The plaintiff further must explain "exactly how he expects those materials would help him in opposing summary judgment." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (citation omitted); *see also Webb v. United States*, No. 1:07cv3290, 2009 WL 3012055, at *8 (N.D. Ohio Sept. 15, 2009) (stating that Rule 56(d) "does not condone a fishing expedition").

The Court can consider the specificity of the allegations stated in a plaintiff's complaint, in addition to those stated in the Rule 56(d) affidavit, when determining whether to grant a continuance. *Webb*, 2009 WL 3012055, at *8.

In the Complaint, Plaintiffs omitted the crucial fact that the Company provided the April 30, 2009 notice to its employees that the plant was closing at the end of June 2009. Instead, Plaintiffs alleged that CSC provided them with their first WARN Act notice on June 20, 2009, three days before they were terminated on June 23, 2009. (Doc. 1 ¶¶ 6-7.) Plaintiffs did not provide any evidentiary support for those Complaint allegations. Two of the Plaintiffs now have conceded in their Affidavits that they received the April 30, 2009 notice from CSC. (Ndiaye Aff. ¶¶ 4-6; Davis Aff. ¶¶ 2-4.) They have averred that they continued working for sixty days at CSC until June 30, 2009. (Ndiaye Aff. ¶¶ 4-6; Davis Aff. ¶¶ 2-4.) Further, counsel for Plaintiffs concedes in his brief opposing summary judgment that CSC provided the CSC employees with the written notice on April 30, 2009 and that CSC did not close the doors to the West Chester facility until July 1, 2009. (Doc. 15-1 at 2, 5.) In light of these facts not being in dispute, Plaintiffs must establish that the April 30, 2009 notice was not sufficient to satisfy the WARN Act to withstand the summary judgment motion**.**

Plaintiffs cannot satisfy their burden. The April 30, 2009 notice provided the address of the West Chester facility expected to close, identified the date of the expected closure, stated that the closure was expected to be permanent, implied that the closure would affect the entire facility and all employees, and provided a name and phone number of a company official to contact for further information. *See* 20 C.F.R. § 639.7(c) and (d) (listing requirements of the notice). The notice expressed that the closing was conditional because USPS had not made a final decision as

14

to whether to renew its contract with CSC, consistent with the WARN Act's authorization of conditional notices.  *See* 20 C.F.R. § 639.7(a)(3).  Plaintiffs contend that the April 30, 2009 notice did not clearly state that the facility would be closing or that layoffs were likely.  (Doc. 15-1 at 8.)  The Court rejects this argument based on a plain reading of the notice.  CSC informed the employees that as of July 1, 2009, it would "no longer be able to offer you continued employment with the Company" because it anticipated the "permanent end of the [USPS] contract at this facility."  (Doc. 9-4 Ex. 2.)  Plaintiffs do not dispute that they knew their employment with the Company at the West Chester facility was conditional upon the USPS contract.  The Court holds that the April 30, 2009 notice satisfied the requirements of the WARN Act set forth at 29 U.S.C. § 2102 and 20 C.F.R. § 639.7.

      Plaintiffs also suggest that the sufficiency of the written April 30, 2009 notice was negated by Program Manager Coy's verbal statement that CSC believed that USPS would renew its contract in time to avert a facility closing.  The WARN Act requires an employer to provide the employees with the best information known to the employer.  20 C.F.R. § 639.7(a)(4).  Plaintiffs do not suggest that the notice information was inaccurate or incomplete as to the USPS contract.  The April 30, 2009 notice was conditional in that CSC states that USPS "*has not yet made* a final decision on the possible renewal of the contract at his facility, which we [CSC] must *at this time* conclude to mean the permanent end of the contract at this facility."  (Doc. 9-4 at 2 (emphasis added).)  Plaintiffs do not dispute the veracity of Coy's alleged statement that USPS had renewed the contract at "the last minute" previously.  (Ndiaye Aff. ¶ 8; Davis Aff. ¶ 6.)  Coy's alleged belief that USPS ultimately would renew the contract does not contradict CSC's position in the written notice that the Company was preparing for the facility to close.

The Court finds that the April 30, 2009 notice was not undermined by Coy's alleged verbal representations.

The Court now must examine whether Plaintiffs are entitled to a continuance to obtain discovery in order to defeat summary judgment. In order to obtain a continuance, Plaintiffs must set forth by affidavit or declaration specific information they hope to obtain through discovery which would overcome the Court's holding that the Company satisfied the WARN Act. Fed. R. Civ. P. 56(d). Plaintiffs' counsel identifies in his Affidavit specific categories of information which Plaintiffs would seek in discovery. (Stenson Aff.) However, some of the specific information which Plaintiffs seek to discover would support only arguments pertaining to the exceptions to the WARN Act's sixty-day notice requirement. For example, Plaintiffs' counsel seeks discovery regarding whether CSC's offer to transfer employees to the new Jeffersonville facility constituted an offer to transfer to a a new workplace within "a reasonable commuting distance" as set forth at 29 U.S.C. § 2101(b)(2)(B). (Stenson Aff. ¶¶ 21, 22.) However, the Company does not need to establish an exception to the WARN Act applies because it satisfied the sixty-day notice requirement with the April 30, 2009 notice. Plaintiffs also seek information relevant to only their potential claim against the Union. (Stenson Aff. ¶¶ 26-28.) This is not a basis to grant a continuance as to the Company.

Additionally, Plaintiffs seek discovery to establish that the Company either did not give timely notice that the landlord intended to terminate its lease for the West Chester facility or that the Company did not give timely notice about the transfer of operations to Jeffersonville. Plaintiffs allege that CSC planned to abandon the West Chester facility even if USPS renewed the contract. (Doc. 15-1 at 10.) For example, Plaintiffs' counsel seeks discovery regarding the

16

terms of the West Chester lease to determine how much notice the landlord was required to give CSC before terminating the lease. (Stenson Aff. ¶¶ 19-20.) Plaintiffs speculate that CSC knew prior to May 21, 2009 that the landlord was cancelling the lease. Plaintiffs' counsel also seeks discovery regarding when CSC began to advertise to hire workers for the Jeffersonville facility. (*Id.* at ¶¶ 5-8.) Plaintiffs believe that the Company began the process of hiring workers for the Jeffersonville facility before it informed the CSC workers that the West Chester facility was closing.[4]

The information which Plaintiffs seek would not allow them to withstand the summary judgment motion. The WARN Act required the Company to give its employees sixty days notice before the plant closing. The WARN Act does not require an employer to provide in the notice a statement of reasons for the closing. *See* 20 C.F.R. § 639.7. Plaintiffs received the full sixty-days notice to which they were entitled, regardless of whether the West Chester plant ultimately closed due to the lapse of the USPS contract, termination of the West Chester facility lease, or the Company's intent to hire cheaper workers at a new facility. *Cf. Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 391 (9th Cir. 1994) (holding that an employer who gave one sufficient

---

[4] Plaintiffs have not provided credible or admissible evidence to support any of these allegations. Plaintiffs merely speculate that the West Chester lease might have provided a certain notice period before the landlord could cancel the lease. "Mere speculation that additional discovery will lead to facts supporting an allegation cannot withstand a motion for summary judgment." *Hughes v. City of North Olmsted*, 894 F. Supp. 1120, 1128 (N.D. Ohio 1995) *rev'd on other grounds*, 93 F.3d 238 (6th Cir. 1995). Also, Plaintiff Davis states that he "discovered, through information from CSC's internet site, which was unearthed by Labor Relations Representative Elizabeth Macaroni, that CSC had been recruiting temporary employees for to [sic] fill positions at its Jeffersonville facility before issuing the WARN notice to unsuspecting West Chester employees." (Davis Aff. ¶ 31.) Davis's statements regarding the information contained on the internet site and concerning what Macaroni told him are hearsay. Plaintiffs failed to provide a copy of any information posted on CSC's internet site.

explanation for why it provided less than sixty-days notice prior to a plant closing was not liable for a WARN Act violation even though it omitted a second explanation justifying the shortened notice period). Also, as to Plaintiffs' theory that the Company could have provided them earlier notice about the opportunity to transfer to Jeffersonville, the WARN Act does not require employers to give sixty days notice to employees prior to a job transfer.

Moreover, Plaintiffs would not be entitled to recover damages under the WARN Act even if the Court ultimately found that CSC knew on April 30, 2009 of multiple reasons for the facility closure. Defective notice is not necessarily treated as though no notice had been provided at all. *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 561 (6th Cir. 1996). The Sixth Circuit held in *Saxion* that employees were entitled to only fifty days of back pay damages pursuant to the WARN Act, not to sixty days, when the plaintiffs received a technically defective notice that their plant was going to close ten days prior to the closing. *Id.* Applied to this case, *Saxion* instructs that Plaintiffs would not be liable for damages to Plaintiffs even if the April 30, 2009 notice was technically defective because the CSC employees in fact had sixty days warning before the West Chester facility closed. The *Saxion* court stated:

> That the notice was deficient in other respects does not change the fact that ten days before the plant was closed, the affected employees clearly knew that it was going to be closed. In calculating damages, therefore, the district court should have used a violation period of 50 days, not 60.

(*Id.*) Here, the Company told Plaintiffs on April 30, 2009 that they would not be offered employment beyond June 30, 2009. The Company informed the Plaintiffs of a different reason for the June 30, 2009 closing in early June 2009. At no time did the Company inform the Plaintiffs that their employment would continue beyond June 30, 2009. Plaintiffs therefore had sixty days notice prior to the plant closing, satisfying the purpose of the WARN Act. In sum,

Plaintiffs have failed to establish that the Court should grant them a continuance to conduct discovery before granting summary judgment in favor of CSC.

In addition, CSC is entitled to summary judgment as to the WARN Act claim of Plaintiffs Rafael Bennett, Rome Blassingame, Matthew Dawson, Doug Foley, and Rick Lee for a separate and independent reason. These five Plaintiffs accepted the transfer to Jeffersonville and worked there for the agreed-upon four weeks. These Plaintiffs have no claim under the WARN Act as a matter of law. Employees who accept a transfer to any other site of employment within thirty days of the plant closing are not considered to have experienced an actionable employment loss under the WARN Act. *See* 29 U.S.C. § 2101(b)(2)(B) (defining employment loss to exclude employees who accept an offer to transfer); 29 U.S.C. § 2104(a)(1) (creating a cause of action only in favor of aggrieved employees who suffer an employment loss). Likewise, Plaintiffs Ahijah Israel, Bassey Essanetok, Maurice Daniels, and Soule Kamara were laid off in March or May 2009 for reasons unrelated to the plant closing. They have no claim under the WARN Act as a matter of law.

**B.      The Company's NLRA Claim Against CSC**

In their second claim, Plaintiffs assert that CSC violated Section 8 of the NLRA, 29 U.S.C. § 158, because it failed to bargain in good faith with the Union. The NLRA makes it an unfair labor practice by an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). The Company moves for summary judgment on the basis that claims for unfair labor practices fall within the exclusive jurisdiction of the NLRB. *See Martin v. Lake Cty. Sewer Co., Inc.*, 269 F.3d 673, 680 (6th Cir. 2001). To the extent that the NLRB dismissed Plaintiff Poland's charge against the Company filed with the NLRB, "a

19

decision by the General Counsel [of the NLRB] not to issue a complaint is unreviewable by the courts." *Rogers v. NLRB*, No. 06-15074, 2007 WL 656281, at *4 (E.D. Mich. Feb. 28, 2007), *report and recommendation adopted by*, No. 06-15074, 2007 WL 906420 (E.D. Mich. Mar. 22, 2007). Moreover, only the United States Courts of Appeal have jurisdiction to review a final decision by the NLRB. 29 U.S.C. § 160(f). For these reasons, the Company is entitled to summary judgment on Plaintiffs' NLRA claim as well.

### IV. CONCLUSION

For the foregoing reasons, the Company's Motion to Dismiss, or in the Alternative, for Summary Judgment (doc. 9) is **GRANTED** and Plaintiffs' Request for Continuance under Federal Rule [of Civil Procedure] 56(f) is **DENIED**.

IT IS SO ORDERED.

                                              ___s/Susan J. Dlott_____
                                              Chief Judge Susan J. Dlott
                                              United States District Court